UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Cr. No. 20-113 (DSD/BRT)

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>)<br>Plaintiff,   )<br>)<br>)<br>vs.   )<br>)<br>MOHAMED HUSSEIN ABDI (3),   )<br>)<br>Defendant.   ) | **DEFENDANT'S POSITION REGARDING SENTENCING** |

## INTRODUCTION

Mr. Abdi was arrested on June 29, 2020 and on March 25, 2021, pled guilty to *Conspiracy to Commit Arson*, in violation of 18 U.S.C. §§ 371 and 844(i). Mr. Abdi was released on July 2, 2020, has been fully compliant on pretrial release, and reports to his supervising officer as directed (PSR, ECF No. 99, ¶ 4). As explained below, Mr. Abdi is employed, he is involved with his community, and he remains close with his family. For the reasons set forth below, Mr. Abdi, by and through his attorneys, Ryan Garry and Daniel Adkins, asks this Court to sentence him to probation.

## LEGAL STANDARD

The law on sentencing is well-settled. The Court is first to resolve any factual and legal disputes related to the PSR, calculate the statutory minimum and maximum sentences, and determine the corresponding sentencing guidelines range. *United States v. Feemster*, 572 F.3d 455, 460–61 (8th Cir. 2009). Next, the Court is to consider if a departure from the guidelines range is warranted. Finally, the Court is tasked with

deciding whether a variance is necessary as it must impose a sentence that is "sufficient, but not greater than necessary" to achieve the statutory sentencing objectives. 18 U.S.C. § 3553(a).

## NO ADDITIONAL PSR OBJECTIONS

Here, the government had no objections to the PSR (ECF No. 95). Defense counsel had primarily factual corrections to the PSR, and asked that paragraph 16[1] not be included (ECF No. 85). Mr. Abdi now withdraws this request. He proffers that he was caught up in the chaos of the George Floyd riots and emotions of the day, does not remember the incident, but does not deny his involvement. Thus, there are no government or defense PSR objections to address.

## PENALTIES

This offense carries no mandatory minimum sentence, with a maximum of 5 years in prison (Plea Agreement, ECF No. 48, p. 3). The parties and the PSR agreed that the United States Sentencing Guidelines establish a base offense level of 24 and with a 3-level reduction for acceptance of responsibility (Plea Agreement, ECF No. 48, pp. 4–5; PSR, ECF No. 99, ¶¶ 40–49). With a criminal history category I and an adjusted offense level 21, Mr. Abdi faces a guidelines range of 37–46 months in prison (Plea Agreement, ECF No. 48, p. 5; PSR, ECF No. 99, ¶¶ 54–55, 78).

---

[1] This is paragraph 17 in the final PSR (ECF No. 99).

## THE OFFENSE CONDUCT

The plea agreement establishes that Mr. Abdi and others conspired to set fire to Gordon Parks High School (ECF No. 48, p. 2) surrounding the George Floyd protests. On May 28, 2020, Mr. Abdi joined his co-defendant to break glass out of a door to enter the high school cafeteria (*id.*). Once inside, Mr. Abdi poured accelerant on the floor and in a trashcan (*id.*). He then started a fire to a trashcan, which he tipped over towards the trail of accelerant (*id.*). He knowingly and voluntarily engaged in this conspiracy to commit arson (*id.* at p. 3).

Mr. Abdi offers absolutely no excuse. However, Mr. Abdi, along millions of people around the world, became immediately appalled and upset by the murder of George Floyd. His emotions overcame him. He very much regrets his actions on May 28, 2020 and will spend the rest of his life making up for them. As demonstrated in the attached support letters, Mr. Abdi's conduct in this case was out of character and the chances of his re-offending are non-existent.

## BACKGROUND

Mr. Abdi was born in 2000 in a refugee camp in Somalia and came to the United States with his family in 2003. The family moved to St. Paul, Minnesota shortly after they arrived in the United States. Mr. Abdi became a Naturalized U.S. Citizen in 2015, and he currently lives with his parents and younger siblings at their home in Maplewood. He remains close to his family members.

He grew up in St. Paul and Maplewood and was exposed to diversity from a young age. He enjoyed meeting people from different backgrounds but he and his family also

struggled to find a balance between the American culture and keeping him engaged in the Somali culture and community. From ages 14 through 18, Mr. Abdi played on a Somali travelling basketball team, which travelled around the country and internationally. He also played basketball in high school and still plays recreationally.

Mr. Abdi graduated from Roseville Area High School in 2018.[2] By his senior year, he had enough high school credits to graduate and started attending college classes. He completed 41 hours post-secondary education options (PSEO) through Century College in law enforcement and criminal justice.[3] He dreamed of being a police officer. After high school graduation, he attended one semester at Dakota County Technical College with the goal of becoming a law enforcement officer, but he decided the program was not the right fit for him at the time and withdrew from classes. He also attended a six-month coding/website development certificate program at the University of Minnesota during the winter of 2019–2020.

Prior to the pandemic, Mr. Abdi spent a year refereeing sixth grade basketball games. Over the past year, Mr. Abdi has been a youth basketball coach for his younger brother and his friends, working to prepare them for their high school basketball season. He also spent time over the pandemic delivering breakfast food to elders in the community that could not leave their homes.

Mr. Abdi is currently working for a security company and runs his own clothing business with his cousin. He works 40 hours per week as a security officer for the

---

[2] Diploma is attached.
[3] Certificate of Completion is attached.

company. The clothing business is doing well, is starting to earn money, and they had their first launch in November 2021. They draw designs for clothing,[4] work with a graphic designer and a screen printer, and coordinate the purchase of the clothing, screen printing, and sale. He works for this company various hours per week depending on demand. Finally, he also volunteers in assisting his cousin with boxing and fitness lessons for underserved children.

## ARGUMENT

A term of imprisonment "is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). A sentence must "fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)). After consideration of all of the mitigating factors in this case, a sentence of probation is sufficient to satisfy the statutory purposes of sentencing in this case.

### I. Mr. Abdi's 3553(a) Factors Warrant a Downward Departure.

#### A. The Nature of the Offense

The guilty plea establishes that Mr. Abdi was one of two individuals who set fire to a high school in the emotional turmoil following the murder of George Floyd. While there is no excuse for Mr. Abdi's choices and actions, it is very probable that but for the murder of George Floyd and its resulting worldwide chaos, Mr. Abdi would not be before the Court today. But it is important for Mr. Abdi to let this Court know that he blames no

---

[4] Attached is one of the t-shirt designs.

one but himself. He started the fire and he caused the damage. These actions are an aberration of his character that is unlikely to ever be repeated.

### B. Mr. Abdi's Characteristics

By all accounts, Mr. Abdi is a kind, intelligent young man. His communication with the undersigned throughout this case has been pleasant, patient, and polite. He has made no excuses for his conduct nor attempted to shift the blame to others. He has taken full responsibility and is remorseful for his choices and actions in this matter. He is involved in his community and remains close with his family.

### C. The Need for Deterrence

While it is important to deter crime, any prison sentence Mr. Abdi receives will have limited impact in his particular case. Said another way, prison has little <u>specific</u> deterrent value given his age and the consequences he has suffered thus far, particularly with the fact that he has no criminal history.[5] "Prison is an important option for incapacitating and punishing those who commit crimes, but the data show *long prison sentences do little to deter people from committing future crimes*" (emphasis added).[6] Evidence suggests "that short sentences may be a deterrent. However, a consistent finding is that increases in already lengthy sentences produce at best a very modest deterrent effect."[7]

---

[5] Mr. Abdi has no adult criminal history outside of a traffic case; he also has one minor juvenile case on his record (PSR, ECF No. 99, ¶¶ 51, 53). His criminal history score is 0 (ECF No. 99, ¶ 54).
[6] U.S. Department of Justice, National Institute of Justice, Five Things About Deterrence 2 (May 2016), https://www.ncjrs.gov/pdffiles1/nij/247350.pdf.
[7] Id.

First, research has shown that *being caught* is more of a deterrent than *punishment*.[8] Simply being caught and indicted is more of a deterrent to both Mr. Abdi and others than a long sentence. Second, prison sentences do not particularly deter future crime: "Inmates learn more effective crime strategies from each other, and time spent in prison may desensitize many to the threat of future imprisonment."[9] Third, rather than punishment, any police presence that increases the chance of being caught is more of a deterrent than punishment.[10] Longer sentences can increase recidivism.[11] Fourth, increasing penalties does not generally deter crime because criminals often do not know what the penalty is for the crime they are committing.[12] It makes sense that people do not research the statutory sentencing and sentencing guidelines before committing a crime. Therefore, increasing penalties is not going to deter crime—it merely fills the prisons and eats up taxpayers' dollars.

## II. Specific Bases for Downward Departures and Variances for Mr. Abdi.

### A. The advisory guidelines range is too harsh, excessive, and "greater than necessary" in this particular case

Mr. Abdi has no criminal history.[13] He is facing a federal prison sentence of 37–46 months (PSR, ECF No. 99, ¶ 78). For a young 21-year-old man who has never been in trouble before, this amount of incarceration is a life-changing amount of time. The Supreme Court in *Pepper v. United States* stated:

---

[8] Id. at 1.
[9] Id.
[10] Id.
[11] Id.
[12] Id.
[13] *See* n.5, *supra*.

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams*, 337 U.S. at 247, 69 S.Ct. 1079; see also *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 82 L.Ed. 43 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender").

562 U.S. at 487–88. Mr. Abdi knows that what he did was wrong. He, like many others, became caught up in the events and emotion following the murder of George Floyd. He regrets his involvement with the arson, wishes he could take it back, and has accepted responsibility.

### B. Stigma of a felony conviction

Mr. Abdi will be a life-long convicted felon, and that is enough punishment. "The stigma of a felony conviction is permanent and pervasive." *United States v. Smith*, 683 F.2d 1236, 1240 (9th Cir. 1982). This will affect Mr. Abdi in obtaining housing, getting a job, volunteering, and so on. "Sometimes [courts do not] fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed." *United States v. Prosperi*, 686 F.3d 32, 48 (1st Cir. 2012).

### C. Mr. Abdi is unlikely to reoffend and poses no danger to the public

The likelihood that Mr. Abdi "will engage in future criminal conduct [is] a central factor that district courts must assess when imposing sentence." *Pepper*, 562 U.S. at 492.

8

Mr. Abdi, upon completion of this case, will return to being a law-abiding, productive member of society. He has learned that he cannot run away with the crowd and will not engage in similar conduct in the future. He fully realizes the gravity of his actions.

"It may *very often* be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." *United States v. Edwards*, 595 F.3d 1004, 1016, n.9 (9th Cir. 2010) (citation omitted). Any terms of probation will be onerous and will certainly be a sufficient punishment for Mr. Abdi. He has proven his ability to abide by conditions and Court orders given his success on pretrial release over the past <u>18 months</u>.

### D. Society will benefit more from Mr. Abdi working than his incarceration

As discussed below, society will shoulder a massive financial burden to incarcerate Mr. Abdi. A guidelines sentence may cost society $122,031.50 to $149,587.00 if he is sent to prison. Society will benefit far more if Mr. Abdi can remain at home, work, and continue to support himself and others.

### E. The Court's sense of what is fair and just

With a federal felony conviction, a fair and just sentence is probation. "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of

reasonableness." *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006). In this case, a merciful sentence of probation is fair and just.

### III. Mr. Abdi's Acceptance of Responsibility.

Mr. Abdi accepted full responsibility in this case. He pled guilty to the offense and wrote a heartfelt and sincere statement:

> On or about May 28, 2020 in the State and District of Minnesota, I was involved in a conspiracy to engage in arson. This violated Title 18, United States Code, Sections 371 and 844(i). Looking back now, I cannot believe I engaged in arson and am ashamed, embarrassed, and extremely remorseful.
>
> To say the least, I was extremely upset about the murder of George Floyd. I had wanted to be a police officer, but after watching the murder of Mr. Floyd on TV, my dream ended and I became angry. Watching the video, I realized that Mr. Floyd could have easily been my father, uncle, or someone else that I knew and loved. He was black, and so am I and my family. Hearing him repeatedly say he could not breathe and calling for help, while officers of the law were present, made my blood boil. Leading up to the protests, I had been attending a coding boot camp at the University of Minnesota in St. Paul; I was looking to learn how to create websites as a back-up plan to becoming a police officer. Every day, I drove past where Philando Castille was shot and killed. I saw myself in him, as well: a black man trying to better himself and his community.
>
> I first went to watch the protests . . . and then participated peacefully. I was showing my love and support. I could feel the pain and confusion in the air amongst the protestors. On May 28, 2020, the protests had moved to St. Paul and things escalated, and I found in myself a moment of weakness and anger. I felt like there was nothing I could ever do to change a system that was created to protect and treat all people of all colors equally, but that so often does not. That pain turned into confusion, which led me to make decisions I will forever regret.
>
> I made my way to a large crowd that was gathered next to a gas station and I saw people trying to get into the locked building. Police started shooting rubber bullets and everyone dispersed. I had already lost the group of friends with whom I had come. I went to another parking lot where there was a huge crowd chanting. Shortly after, the National Guard troops began shooting tear gas into the crowd and everyone ran away. I saw someone drop a metal

10

baseball bat, and I picked it up and ran as far away as I could. I joined a small crowd near the Gordon Parks High School watching another building burn across the street.

I saw a man nearby. This man was Jose Felan. I had not met him prior to this moment. I told him police were coming and that we should leave. As we walked away, I asked him where he was going and said I wanted to go with. He threw me a bottle of lighter fluid from his bag and said his target was Gordon Parks High School. I agreed to participate. I knew that we would be committing arson in the school.

We got to the school, and I smashed the lower half of the door. Mr. Felan tried to break the upper half. I broke mine first, and we both got in that way. I poured the accelerant in a trash can and worked to start the fire.

During the break-in, I cut my finger. I went to the medic tent. There, I ran into Mena Yousif. It was not until Mr. Felan introduced us that I knew her name. I did not meet her before the arson.

This all happened very quickly, and the memory is now a blur. I did not set out that day to commit arson. I went out because of the murder of George Floyd and then got caught up in the chaos, but I take responsibility for my actions. They were done with intent, and I have no excuse for Your Honor. I did what I did, and I cannot change that. I am very remorseful, very sorry, and wish I had not done it. It was certainly not how I should have expressed my anger and sorrow. I am sorry.

**IV.    Support from the Community.**

Mr. Abdi has considerable support from his family and community. Attached are 14 support letters, some of which are quoted here. Dr. S.O., a friend of Mr. Abdi's family, writes:

> The events of the past year have resonated differently for different people. As someone who works with young people, I have seen the frustrations many of them feel toward a system which continues to disproportionately impact Black and Brown communities, and in particular, Black men like Mohamed. What many felt is centuries in the making and a deep rage that has the potential to anchor our nation in justice. What Dr. King called righteous rage is what many people continue to fight for, it's what many of you continue to fight for. While the tragic actions of a group of young people cannot be

justified, what is important here is to go deeper, beyond the surface. To reiterate, I don't condone what Mohamed is accused of. There are many ways to protest and fight for justice and this was not an appropriate way to call us to our espoused values. What I do know is that young people deserve a second chance. What I do know is that we all make mistakes and while this was a tremendous one, Mohamed is apologetic and willing to right this wrong. He has no history of any prior issues and is ready for the future that he has been working toward for so long.

I plead with you to give this young man a chance at a better life. I plead with you to allow him to become a contributing member of our society.

Imam/Dr. H.A.M. writes:

I know Mohamed was a role model and hard worker for his family and our community. He was well respected in the community. He finished two years college. He completed one of coding course in Computer Science plus he knows to build a website. He is an asset for our immigrant community. He speaks both English and Somali helping our community for free interpretation and translation services. He always helps the community when he is needed.

H.O. and N.A., Mr. Abdi's parents, write:

Out of all our kids, Mohamed was always very special to us. He was always sensitive, compassionate, full of love and was very close to us especially his mother. He would come home excited from school to tell us what he did and learned that day. He would offer to help mom out in the kitchen, play and read with his younger siblings. Anyone who knows Mohamed knows he is one of the kindest souls on this planet. He always had a smile on his face and brought the best energy into our household. He brings happiness into every room he walks into. He is extremely supportive and protective of his family. He has helped us and contributed to the family in so many ways and we can't image our lives without him. He has always been family oriented and to this day, his goal consists of bettering out family and supporting us anyway needed.

We were heartbroken to hear about the choice Mohamed made during the protests. It was so difficult watching what happened to George Floyd and Mohamed related in a deep way. He is a black man in America and has seen the past few years how men that look like him have been killed and no one bats an eyelid. It pained us all and everyone was sick of people that look like us getting killed constantly. This in no way justifies his behavior but just

frames it. We live with Mohamed and can see how badly that decision was and how much he regrets it to the point where he has become physically ill. It has been very painful as parents to see what our son is going through and not knowing how we can help him.

. . .

We believe Mohamed deserves another chance to right his wrong and create the life he wants for himself and his family. He is so passionate about life and doing community work that he would be truly missed. The community would benefit from Mohamed's contribution to society. He has so many amazing ideas and goals to achieve as his life is just starting as a 20-year-old. Mohamed is deeply regretful, and this has been evident. We are sure that Mohamed will have a wonderful future based on his amazing characteristics and will show the world what an amazing person he is if given the chance.

J.A., Mr. Abdi's sister, writes:

Mohamed has been there for me in every milestone in my life and has helped and supported me in ways I can't ever thank him enough for. He has been there for me emotionally, financially, and spiritually countless times. He has helped me get through tough times by giving me good reminders and advise that eases my heart and I know he does this for everyone around him. He has also done the same for all his other siblings and especially so for the 3 youngest in our family. They rely on him in so many ways. Helps financially, he helps tutor them, he takes them out and supports any way possible. He is a critical member of the family who is deeply loved. . . .

Being around Mohamed often since the beginning, I can speak on the deep regret he has from what happened. His mental and physical health has declined as a result, and he prays and constantly asks for forgiveness. I do not condone what happened, but I know how deeply Mohamed regrets his actions and wishes it never happened and feel that Mohamed deserves a break, and he would be deeply missed in the community, and it truly wouldn't serve the community if he was incarcerated.

A.H., Mr. Abdi's cousin, writes:

He is someone that grew up on the straight and narrow. He is someone who, when it comes to basketball, is a leader both on and off the basketball field. I personally watched him diffuse heated situations several times. Most of which had nothing to do with him. His kind heartedness, and his ability to be an outstand citizen have always been what has gravitated me toward him. What has happened to George Floyd was extremely devastating and heart breaking but did not excuse for rioting. For Abdi to part take in the rioting is

completely out of character. What he has done is not excusable, but I am asking for him to be forgiven for it. After long talks and scolding I believe Abdi is ready to turn a new leaf. The tears he has shed in regret to the situation has proven to the family and to the community that he will never be a part of a situation like this. I do not approve the way this situation has unfolded, but I do see the way Abdi is trying to fix what he has done.

A.A., Mr. Abdi's brother, writes:

[M]y brother is a good man, he studied at the University of Minnesota under their prestigious IT/coding program, the behavior he displayed on the date of the incident is completely out of character for him. He has confided in me numerous times about his regrets on that day. Although I do not condone his behavior, I do believe that he deserves a chance, and that being incarcerated would not be in the best interest of the community.

A.A., Mr. Abdi's friend, writes:

Mohmed is known for many great qualities, but the one thing that stands out the most is the way he cares about people. He puts everyone in front of him and loves to go out of his way to care and be there for them. Another great quality Mohamed has is that he is respectful. He treats others with courtesy, deference, dignity, and civility. I am aware of Mohamed Abdi's legal trouble, and I was surprised when I heard about it. This is not like him. It's out of his character, and he regrets it every day. In the 20+ years he's been on this earth this is the first time Mohamed had legal troubles. Although I don't condone his behavior and what he did, he deserves a second chance. Mohamed Abdi is a young man with dreams and goals, and I wouldn't want to see him not be able to fulfill those goals by a mistake he made and regrets.

V. **Cost to Incarcerate Mr. Abdi**

> In 1984, at the start of my career, 188 people were imprisoned for every 100,000 inhabitants of the United States. Other Western industrialized countries had roughly equal numbers. By 2010 that figure had skyrocketed to 497 people imprisoned in the U.S. for every 100,000 inhabitants. Today, we imprison more of our people than any other country in the world.
>
> How did 'the land of the free and the home of the brave' become the world's biggest prison ward? The U.S. now houses 5% of the world's population and 25% of its

prisoners. Either our fellow Americans are far more dangerous than the citizens of any other country, or something is seriously out of whack in the criminal-justice system. . . .

~U.S. District Judge Michael A. Ponsor[14]

Confirming Judge Ponsor's statement, statistics show that in the past few decades, the general prison population has soared:[15]



Compared to the rest of the world, as stated above by Judge Ponsor, the United States imprisons a shocking number of its citizens, showing that we imprison more people than Rwanda and Russia and far more than Spain, China, and India:[16]

---

[14] Ponsor, Michael A., *The Prisoners I Lose Sleep Over*, THE WALL STREET JOURNAL (Feb. 12, 2014), available at https://www.wsj.com/articles/SB10001424052702304680904579365440971531708.
[15] The Sentencing Project, https://www.sentencingproject.org/wp-content/uploads/2021/06/US-prison-pop-1925-2019-1.png (citing Bureau of Justice Statistics) (last visited Jan. 11, 2022).
[16] Id. at https://www.sentencingproject.org/wp-content/uploads/2021/05/intl-rates.png (citing Institute for Crime & Justice Policy Research) (last visited Jan. 11, 2022).



Justice Kennedy made a similar statement to Judge Ponsor: "Our resources are misspent, our punishments too severe, our sentences too long, . . . the sentencing guidelines are responsible in part for the increased terms . . . [and they] should be revised downward." Statement of Justice Anthony Kennedy, ABA Annual Meeting (Aug. 9, 2003).

The final PSR (ECF No. 99, ¶ 88) shows that the expense of putting an offender on probation pales in comparison to incarcerating that person:

|  | **Bureau of Prison** | **Community Corrections** | **Supervision by Probation** |
| --- | --- | --- | --- |
| **Daily** | $108.00 | $109.00 | $12.00 |
| **Monthly** | $3,280.00 | $3,327.00 | $372.00 |
| **Annually** | $39,365.00 | $39,924.00 | $4,465.00 |

If Mr. Abdi is sentenced to 37 months (the low end of the guidelines range)—approximately 3.1 years—the United States will spend $122,031.50 if he is sent to prison. If Mr. Abdi is sentenced to 46 months (the high end of the guidelines range)—approximately 3.8 years—the United States will spend $149,587.00 if he is sent to prison.

For a first-time serious offense wherein Mr. Abdi has expressed immense and sincere remorse, this is a considerable amount of money to incarcerate him.

Pursuant to statutes, Mr. Abdi is eligible for 1 to 5 years of probation (PSR, ECF No. 99, ¶ 83). Probation must include a fine, restitution, or community service (ECF No. 99, ¶ 83). Mr. Abdi has no objection to providing community service as part of his probationary term. While the guidelines do not suggest probation (ECF No. 99, ¶ 84), they are advisory and not mandatory.

## CONCLUSION

For the foregoing reasons, Mr. Abdi respectfully requests that this Court sentence him to probation, which would achieve justice in this case. Mr. Abdi is a good person who, like many people, was severely affected by the murder of George Floyd. He expressed his anger and sadness in an illegal manner. This was an aberration of his character and will not be repeated.

Respectfully submitted,

**RYAN GARRY, ATTORNEY, LLC**

Dated: January 11, 2022

s/ Ryan Garry
Ryan P. Garry (Attorney No. 0336129)
Attorneys for Defendant
333 South Seventh Street, Suite 2350
Minneapolis, MN 55402
Phone: (612) 436-3051
Fax: (612) 436-3052
ryan@ryangarry.com

17

**NORTH STAR CRIMINAL DEFENSE**

Daniel S. Adkins (Attorney No. 0266085)
Attorneys for Defendant
The Dacotah Building 207
370 Selby Avenue
St. Paul, MN 55102
(651) 330-9678